

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES LAWRENCE RICH, | ) | Case No. 10cv2022-MMA (BLM) |
| Plaintiff, | ) ) | **REPORT AND RECOMMENDATION FOR ORDER GRANTING IN PART** |
| v. | ) ) | **AND DENYING IN PART PLAINTIFF'S MOTION FOR** |
| MICHAEL J. ASTRUE, Acting Commissioner of Social Security, | ) ) ) | **SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY** |
| Defendant. | ) ) | **JUDGMENT** |
| | ) | [ECF No. 15 & 16] |

Plaintiff James Rich brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 15, "Pl.'s Mot."), Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment (ECF Nos. 16 & 17, "Def.'s Mot." & Def.'s Opp'n"), and Plaintiff's Reply to Defendant's Cross-Motion for Summary Judgment (ECF No. 19, "Pl.'s Reply").

This Report and Recommendation is submitted to United States District Judge Michael M. Anello pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART** and

**DENIED IN PART** and Defendant's Cross-Motion for Summary Judgment be **DENIED**.

## PROCEDURAL BACKGROUND

On April 10, 2008, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning September 10, 2006.  <u>See</u> Administrative Record ("AR") at 13.   The claim was initially denied on June 19, 2008 and again upon reconsideration on September 17, 2008, resulting in Plaintiff's request for an administrative hearing on December 4, 2008.  <u>Id</u>.

On March 12, 2010, a hearing was held before Administrative Law Judge ("ALJ") Jerry F. Muskrat.  <u>Id</u>. at 19.  Plaintiff, an impartial medical expert (John R. Morse, M.D.), and an impartial vocational expert (Gloria J. Lasoff, M.A.) testified at the hearing.  <u>Id</u>. at 13.  In a written decision dated March 24, 2010, ALJ Muskrat determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act.  <u>Id</u>. at 19.  Plaintiff requested review by the Appeals Council and submitted additional evidence in support of his alleged disability.  <u>Id</u>. at 1-5.  In a letter dated July 30, 2010, the Appeals Council found no basis for reviewing the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner.  <u>Id</u>. at 1.

On September 28, 2010, Plaintiff filed the instant action seeking judicial review by the federal district court.  <u>See</u> ECF No. 1.  On March 29, 2011, Plaintiff filed the motion for summary judgment at issue in this Report and Recommendation.  <u>See</u> Pl.'s Mot.   Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's motion on April 29, 2011.  <u>See</u> Def.'s Mot. & Def.'s Opp'n.  Plaintiff filed a reply to Defendant's cross-motion on May 13, 2011.  <u>See</u> Pl.'s Reply.

**FACTUAL BACKGROUND**

**A. Plaintiff's Education and Employment History**

Plaintiff was born on March 27, 1948 and was sixty-one years old at the time of the ALJ's decision.  <u>See</u> AR at 29.  He has a high school education and has completed one semester of junior college.  <u>Id</u>.  From March 1995 until September 2006, prior to the onset of his alleged disability, Plaintiff worked as an equipment operator and working foreman for various companies. <u>Id</u>. at 30-33.  Since he has stopped working, Plaintiff has been financially supported by his wife,

1    one year of disability payments from the state of California, and some unemployment benefits.

2    Id. at 33.

3    **B. Plaintiff's Medical History**

4          The earliest records included in the Administrative Record reference a trip to Sharp

5    Grossmont Hospital in December 2004.  Id. at 247.  The records indicate that Plaintiff went to the

6    hospital due to a large amount of swelling in his neck after having surgery.  The records do not

7    provide any additional details about Plaintiff's condition and it seems that Plaintiff left the hospital

8    before any work was completed[1].  Id. at 249.  Plaintiff's medical records pick up again in 2006.

9    Plaintiff testified that he has not worked or otherwise engaged in any activities that have

10    produced income since September 2006.  Id. at 33.  On September 18, 2006, Plaintiff visited the

11    urgent care department of Sharp Rees-Stealy Medical Group complaining of dizziness, orthopnea

12    after falling asleep, abdominal pain, and shortness of breath with exertion, and was noted to be

13    in some heart failure.  Id. at 304 & 349.  He was told to meet with Dr. Douglas Levy for a follow

14    up appointment later that week and an echocardiogram, which he did on September 22, 2006.

15    Id. at 348-349.  On November 15, 2006, Plaintiff had a consultation with Dr. Henry Ingersoll due

16    to additional dizziness and chest pain that he had experienced the week before.  Id. at 304.  Dr.

17    Ingersoll noted that Plaintiff's mild congestive heart failure had improved and that Plaintiff's

18    echocardiogram suggested that he had some coronary disease, although his symptoms were

19    somewhat equivocal.  Id. at 306.

20          On December 14, 2006, Plaintiff was admitted to Sharp Memorial Hospital for nonischemic

21    cardiomyopathy.  Id. at 251.  After running a variety of tests, Dr. Bret R. Scher noted that cardiac

22    catheritization revealed no significant coronary disease.  Id. at 253.  His impressions after seeing

23    Plaintiff were nonischemic cardiomyopathy (viral or alcoholic) and ventricular tachycardia (after

24    treadmill test).  Id.  Dr. Scher started Plaintiff on Coreg 3.125 b.i.d. and Aldactone in addition to

25    his other medications and told Plaintiff that he must abstain from all alcohol.  Id.  Plaintiff was

26    discharged from the hospital on December 17, 2006 by Dr. Elizabeth Noll with a diagnosis of

27    nonischemic cardipmyopathy and non-sustained ventricular tachycardia.  Id. at 254.  Dr. Noll

28

---

[1]Page 249 of the Administrative Record states that the patient could not be found.

1   recommended that Plaintiff follow a low sodium diet, discontinue all alcohol and cigarette use,

2   avoid illicit drugs, and avoid driving.  Id. at 256.  On December 29, 2006, Plaintiff had a follow

3   up appointment with Dr. Noll.  Id. at 297.  At the appointment, Plaintiff complained about feeling

4   fatigued and stated that he had periods of depression and anxiety.  Id. at 298.  Dr. Noll again

5   assessed Plaintiff as having nonischemic dilated cardiomyopathy with chronic systolic heart failure

6   and non-sustained ventricular tachycardia, asymptomatic on therapy, but found that Plaintiff was

7   clinically stable.  Id.

8        A clinical update report from January 2, 2007, shows that Dr. Noll again advised Plaintiff

9   not to drive and that she anticipated that it would take two to four months before she would

10   know whether or not Plaintiff would ever be able to drive again.  Id. at 296.  Dr. Noll also noted

11   that Plaintiff should not begin permanent disability paperwork because she did not anticipate that

12   Plaintiff would be permanently disabled.  Id.  Plaintiff's January 31, 2007 follow up appointment

13   with Dr. Noll showed that Plaintiff was still fatigued and not following Dr. Noll's orders with

14   respect to abstaining from all alcohol consumption.  Id. at 293-294.

15        On February 6, 2007, Plaintiff arrived at Sharp Memorial Hospital via ambulance after going

16   to Urgent Care with chest pain, dizziness, and mild shortness of breath.  Id. at 266-267.  Plaintiff

17   had a follow up appointment with Dr. Noll on March 5, 2007 where her assessment of Plaintiff

18   showed nonischemic dilated cardipmyopathy, stable fluid status, symptomatic non-sustained

19   ventricular tachycardia, no clinical recurrence, and obesity.  Id. at 292.  Dr. Noll recommended

20   that Plaintiff eliminate caffeine from his diet and again advised him not to drive or operate heavy

21   equipment.  Id.

22        Plaintiff had another follow up appointment with Dr. Noll on August 24, 2007.  Id. at 288.

23   Dr. Noll's assessment after this appointment included nonischemic dilated cardiomyopathy, stable

24   fluid status, symptomatic non-sustained ventrical tachycardia, on therapy, dry cough suspect ACE

25   inhibitor, side effect, and musculoskeletal chest pain.  Id. at 289.  In a progress record dated

26   September 4, 2007, Dr. Douglas Levy noted that Plaintiff was advised by his cardiologist (Dr. Noll)

27   not to work, drive or exercise.  Id. at 478.  An echocardiogram from September 11, 2007 showed

28   that Plaintiff had: (1) mild concentric left ventricular hypertrophy; (2) normal overall LV systolic

function; (3) mild left atrial enlargement; (4) aortic sclerosis; and (5) mild aortic regurgitation. During a September 14, 2007 follow up appointment with Dr. Noll, she found that Plaintiff was clinically improved compared with his last visit, but stated that "as using equipment and driving is a part of his job description, I continue to believe that he is disabled and will have further opinion on follow up in November." Id. at 284. After the November 5, 2007 follow up, Dr. Noll restated her prohibition on Plaintiff's use of equipment and driving and indicated she would reassess the situation in a couple of months. Id. at 445.

Dr. Noll examined Plaintiff again on January 7, 2008; however, her report did not address whether or not Plaintiff could drive or operate equipment. Id. at 278-279. At Plaintiff's August 25, 2008 follow up appointment, Dr. Noll assessed Plaintiff as having resolved nonischemic dilated cardipmyopathy, symptomatic non-sustained ventricular tachycardia, no clinical recurrence, and dyspnea on exertion, etiology unclear. Id. at 581. Dr. Noll did not comment on Plaintiff's ability to drive or operate machinery in this progress note or in the progress note following Plaintiff's December 15, 2008 follow up appointment. Id. at 581 & 631. Plaintiff met with Dr. Noll again on July 1, 2009, where he mentioned occasional left-sided sharp chest pains that he experienced while at rest and with emotional stress. Id. at 604. Dr. Noll found Plaintiff to be clinically stable from a cardiovascular standpoint and did not discuss his ability to drive or operate heavy machinery. Id. at 605.

On March 19, 2010, Plaintiff was admitted to the hospital after several days with shortness of breath, PND and orthopnea. Id. at 645. He was discharged the next day with a diagnoses of congestive heart failure decomposition, diabetes, hypertension, hyperlipidemia and diastolic dysfunction. Id. at 646. Plaintiff returned to the emergency room on May 18, 2010 complaining of palpitations. Id. at 676. He was assessed as having palpitations secondary to premature ventricular contractions and congestive heart failure, but found to be stable and suitable for discharge. Id. at 680.

## C.  Social Security Administration Hearing

On March 12, 2010, Plaintiff, represented by counsel, appeared at his hearing before the ALJ. Id. at 24. During the hearing, the ALJ questioned Plaintiff regarding his education, work

experience, and alleged disability.  Id. at 29-41.  Plaintiff testified that he spent the previous fifteen years working as an equipment operator and/or working foreman.  Id. at 30-33.  As an equipment operator and working foreman, some of Plaintiff's tasks included "running a dozer," running a loader, operating a tractor, and running a wheel loader.  Id. at 32-33.  He was with one employer from March 1995 until 2003 and another employer from 2003 until he stopped working in 2006.  Id. at 30-32.

When questioned about why he could not work, Plaintiff testified that he can no longer operate machinery due to his physical problems, such as "dizzy spells" and "arrhythmia bouts" which can be triggered by physical labor and stress.  Id. at 35-36.  Plaintiff further testified that if he takes his arrhythmia medication he gets "back to normal," but that he suffers from dizzy spells even while taking his medication.  Id. at 36.  Plaintiff testified that when he feels these symptoms coming on, he tries to relax and "have a little drink of water, and it usually eventually goes away."  Id.  According to Plaintiff, these spells occur several times a week and often are accompanied by shortness of breath.  Id. at 36-37.  Plaintiff also testified that he has diabetes that is controlled with medication and diet.  Id.  Additionally, Plaintiff stated that he is taking eleven different medications (see id. at 38 & Exhibit 13F at 440) and that the side effects include weight gain and difficulty walking after sitting for 15 or 30 minutes.  Id. at 38.

When asked about his current physical abilities, Plaintiff testified that he could lift a gallon of milk, that he could not sit comfortably for more than an hour, that he has difficulty sleeping, that he could not stand for a full hour, and that he could walk at a slow speed on a treadmill for "about a mile and a half."  Id. at 38-40.  Plaintiff concluded his testimony by stating that he did not believe that he could safely return to his past work and that several times before he was diagnosed he fell off pieces of equipment while at work.  Id. at 40.  Plaintiff also testified that his doctor informed him that he should not drive or operate heavy equipment.  Id.

The ALJ then elicited testimony from Dr. Morse, an impartial medical expert.  Id. at 41. Having reviewed the medical records, Dr. Morse concluded that Plaintiff does suffer from a "severe medically determinable physical impairment" including: nonischemic cardiomyopathy, non-sustained ventricular arrhythmia and diabetes.  Id. at 42.  Dr. Morse further testified that

none of the three impairments met or equaled any of the social security disability listings, but that they did impose limitations on Plaintiff's ability to work.  Id. at 43.  Dr. Morse explained those limitations by stating that Plaintiff could: (1) lift "25 pounds on a frequent basis and 50 pounds occasionally;" (2) sit without restriction; (3) stand and walk for "six hours out of an eight-hour day;" and that Plaintiff could work without: (4) any push-pull limitations; (5) any postural or manipulative limitations; and (6) any visual or communicative limitations as long as he was able to "avoid concentrated exposure to hazardous machinery," heights, fumes, gases and toxic substances.  Id. at 43-44.

Finally, the ALJ called vocational expert Gloria J. Lasoff, M.A. to testify.  Id. at 47.  In preparation for her testimony Ms. Lasoff prepared a summary of Plaintiff's past relevant work ("PRW").  Id. at 243.  The summary described Plaintiff's PRW as an Industrial Truck Operator, DOT Code 921.683.050[2].  The ALJ presented Ms. Lasoff with two hypothetical questions concerning employment opportunities for someone of Plaintiff's age, education, work history, and medical condition.  Id. at 49.  Specifically, the ALJ asked if Plaintiff would be able to perform his PRW if he was limited to the light range of exertional limitation and had "environmental limitations requiring him to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and also to hazards."  Id.  Ms. Lasoff testified that Plaintiff would not be able to return to his past relevant work in that hypothetical due to the exertional limitation alone.  Id.  The second hypothetical was that same as the first except that Plaintiff was able to perform medium range

---

[2]An industrial truck operator is described as one who: Drives gasoline-, liquefied gas-, or electric-powered industrial truck equipped with lifting devices, such as forklift, boom, scoop, lift beam and swivel-hook, fork-grapple, clamps, elevating platform, or trailer hitch, to push, pull, lift, stack, tier, or move products, equipment, or materials in warehouse, storage yard, or factory: Moves levers and presses pedals to drive truck and control movement of lifting apparatus. Positions forks, lifting platform, or other lifting device under, over, or around loaded pallets, skids, boxes, products, or materials or hooks tow trucks to trailer hitch, and transports load to designated area. Unloads and stacks material by raising and lowering lifting device. May inventory materials on work floor, and supply workers with materials as needed. May weigh materials or products and record weight on tags, labels, or production schedules. May load or unload materials onto or off of pallets, skids, or lifting device. May lubricate truck, recharge batteries, fill fuel tank, or replace liquefied-gas tank. May be designated according to article moved as Lead Loader (smelt. & refin.); process in which involved as Stripper Truck Operator (smelt. & refin.); or type of truck operated as Electric-Truck-Crane Operator (any industry); Fork-Lift-Truck Operator (any industry); Tier-Lift-Truck Operator (any industry). May be designated: Burnt-Lime Drawer (concrete prod.); Casting Trucker (foundry); Electric-Freight-Car Operator (r.r. trans.); Electric-Truck Operator (any industry); Gasoline-Truck Operator (any industry); Metal-Storage Worker (nonfer. metal); Package-Lift Operator (any industry).  See United States Department of Labor, Dictionary of Occupational Titles. 921.683-050 (4th ed.) available at http://www.occupationalinfo.org/92/921683050.html.

1  work as opposed to light.  Ms. Lasoff testified that Plaintiff then would be able to perform his past

2  relevant work.  Id. at 49-50.

3        The ALJ then asked Ms. Lasoff for assistance in formulating the Plaintiff's vocational profile.

4  Id.  Ms. Lasoff testified that during the period in question, Plaintiff was an individual of advanced

5  age or closely approaching advanced age and a high school graduate or more, with a semi-skilled

6  work background whose skills were not generally transferable.  Id. at 50.  She noted that this

7  vocational profile calls for a finding of disabled with the first hypothetical and a finding of not

8  disabled with the second hypothetical.  Id. at 51.  Ms. Lasoff further testified that in the second

9  hypothetical, if Plaintiff was also required to avoid hazardous machinery, he would not be able

10  to perform his past relevant work.  Finally, Ms. Lasoff testified that in the second hypothetical,

11  if Plaintiff could only stand for one hour, walk for one-and-a-half miles, lift and carry a gallon of

12  milk, and sit comfortably for an hour, he would not be able to perform his past relevant work or

13  any other work.  Id. at 53-54.

14  **D.  The ALJ's Decision**

15        On March 24, 2010, the ALJ issued a written decision in which he determined that Plaintiff

16  was not disabled under sections 216(i) and 223(d) of the Social Security Act because Plaintiff was

17  capable of performing his past relevant work as an industrial truck operator.  Id. at 18-19.  After

18  agreeing with and adopting Dr. Morse's analysis, the ALJ found that Plaintiff had "the residual

19  functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) except he must

20  avoid concentrated exposure to fumes, odors, gases, poor ventilation, etc., and hazards

21  (machinery, heights, etc.)."  Id. at 16.

22  <center>**LEGAL STANDARD**</center>

23        Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial

24  review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is

25  limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence

26  and contains no legal error.  Id.; Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193

27  (9th Cir. 2004).

28        Substantial evidence is "more than a mere scintilla, but may be less than a

<center>8</center>

preponderance." <u>Lewis v. Apfel</u>, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted).  It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." <u>Id.</u> (citation omitted); <u>see also</u> <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1011 (9th Cir. 2003).  "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted).  Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.  <u>Batson</u>, 350 F.3d at 1193.  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  <u>Lewis</u>, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  <u>See</u> <u>Batson</u>, 359 F.3d at 1193.  Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social Security Administration for further proceedings.  <u>Id.</u>

## DISCUSSION

Plaintiff argues that the ALJ erroneously denied his claim for disability benefits by: (1) failing to properly consider the opinion of Plaintiff's treating doctor, Dr. Noll, or offer adequate reasons for disregarding her opinion and (2) rejecting the testimony of Plaintiff's daughter.  <u>Id.</u> at 10.  Plaintiff asks this Court to reverse the final decision of the Commissioner and remand the case for the payment of benefits.  <u>Id.</u> at 12.  Alternatively, Plaintiff asks the Court to reverse the final decision of the Commissioner and remand this case to the Social Security Administration for further proceedings.  <u>Id.</u>

Defendant counters that the ALJ's decision was supported by substantial evidence.  First, Defendant asserts that the ALJ conducted a careful examination of Dr. Noll's treatment notes through July 2009, including the records that Plaintiff contends the ALJ ignored.  <u>See</u> Def.'s Mot. at 3.  Defendant also contends that the testimony from Plaintiff's daughter is incompetent medical

1   opinion evidence and properly rejected by the ALJ.  Id. at 7.  Defendant further states that even

2   if the ALJ did err in rejecting the testimony, any such error was harmless as it mirrored Plaintiff's

3   testimony and substantial evidence supports the ALJ's finding of non-disability.  Id.  Defendant

4   concludes that Plaintiff's motion should be denied and the Commissioner's cross motion for

5   summary judgment granted.  If, however, the Court finds that the ALJ erred, Defendant asks that

6   the Court remand for further administrative proceedings, not for a finding of disability.  Id. at 8.

7   **A.  Opinion of Treating Doctor**

8           Plaintiff argues that the ALJ erred by ignoring the opinion of his treating physician, Dr. Noll.

9   See Pl.'s Mot. at 9.  Plaintiff explains that Dr. Noll "repeatedly admonished him not to drive or

10  operate heavy equipment," and that the ALJ failed to mention the admonition anywhere in his

11  opinion.  Id.  While not explicitly stated in his moving papers, Plaintiff's argument is that because

12  his past relevant work as a heavy equipment operator requires driving and operating heavy

13  equipment, the ALJ necessarily rejected Dr. Noll's opinion when the ALJ determined that Plaintiff

14  could perform his past relevant work.  Plaintiff further states that the ALJ's failure to offer specific

15  reasons for discounting Dr. Noll's opinion constitutes legal error, and therefore, Dr. Noll's opinion

16  should be credited "as a matter of law."  Id. at 10 & Pl.'s Reply at 3.  Defendant disagrees

17  claiming that the ALJ carefully considered Dr. Noll's early treatment notes, clinical observations,

18  and findings on testing.  See Def.'s Mot. at 4.  Defendant argues that Plaintiff "misconstrues the

19  evidence" by focusing on a brief period of treatment records when Plaintiff first alleges he became

20  disabled as opposed to Dr. Noll's more recent records.  Id. at 3.  Defendant contends that the ALJ

21  did not reject the findings of Dr. Noll, but instead cited to and heavily relied on her findings.  Id.

22  at 5.

23          The opinion of a treating doctor generally should be given more weight than opinions of

24  doctors who do not treat the claimant.  See Turner v. Comm'r of Soc. Sec., 613 F. 3d 1217, 1222

25  (9th Cir. 2010) (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)).  If the treating

26  doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and

27  convincing" reasons supported by substantial evidence in the record.  Id. (citing Lester, 81 F.3d

28  at 830-31).  Even when the treating doctor's opinion is contradicted by the opinion of another

doctor, the ALJ may properly reject the treating doctor's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Id. (citing Lester, 81 F.3d at 830-31).  This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Here, the ALJ erred by rejecting Dr. Noll's opinion that Plaintiff is unable to operate heavy machinery without providing clear and convincing reasons supported by substantial evidence in the record.  See Turner, 613 F. 3d at 1222.  Plaintiff's treating cardiologist was Dr. H. Elizabeth Noll and the administrative record contains her treatment records from December 2006 through July 2009.  AR at 254-256 & 604-605.  In December 2006, Dr. Noll advised Plaintiff not to drive or operate heavy equipment.  Id. at 256.  This restriction was included in almost every one of Dr. Noll's treatment records through November 2007.  In a progress note dated November 5, 2007, Dr. Noll stated that "as using equipment and driving is a part of his job description, I continue to believe that he is disabled and will have further opinion on follow up in a couple of months."  Id. at 445.  Starting in January 2008 and continuing through 2009, Dr. Noll did not mention any prohibition on driving or operating heavy equipment.  Id. at 278, 581, 631, 605 & 599.  However, she also never stated that she was eliminating that restriction.  Id.  In his determination of whether or not Plaintiff was disabled, the ALJ discussed Dr. Noll's treatment records, however, he did not mention her opinion that Plaintiff should not drive or operate heavy machinery.  Id. at 13-19.

In considering Plaintiff's case, the ALJ followed the five-step sequential evaluation process. Id. at 14-15.  At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful employment since September 10, 2006.  Id. at 15.  At step two, the ALJ determined that Plaintiff had the following severe impairments: cardiomyopathy, ventricular arrhythmia, and diabetes.  Id.

In reaching this conclusion, the ALJ specifically referenced Dr. Noll's treatment records from December 14, 2006, August 25, 2008, and July 29, 2009 in which she discussed Plaintiff's diabetes and diagnosed him as suffering from nonischemic dilated cardipmyopathy, symptomatic non-sustained ventricular tachycardia, and dyspnea.  Id.  The ALJ then stated that he concurred with and adopted the analysis of Dr. John Morse, the independent medical expert.  Id. at 16.  Like Dr. Noll, Dr. Morse found that Plaintiff suffered from cardiomyopathy, ventricular arrhythmia, and diabetes.   At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1.  Id. at 16.

Before considering the fourth step, the ALJ addressed Plaintiff's residual functional capacity ("RCF").   Id.   The ALJ determined that Plaintiff's medical impairments could reasonably be expected to cause the claimed symptoms but found Plaintiff's statements regarding the "intensity, persistence, and limiting effects of these symptoms … not credible" and therefore discounted them.  Id. at 17-18.  Instead, the ALJ adopted the findings of the state medical consultants, Drs. Taylor-Holmes and Harman, that Plaintiff "could perform a significant range of medium work … [but must] avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., and hazards (machinery, heights, etc.)."  Id. at 18.  As a result, the ALJ found that Plaintiff had "the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) except he must avoid concentrated exposure to fumes, odors, gases, poor ventilation, etc., and hazards (machinery, heights, etc.)."  Id. at 16.  Using this RFC and relying upon the Vocational Expert's testimony, the ALJ determined that Plaintiff could perform his past relevant work as an industrial truck operator.  Id. at 18.  The ALJ stated "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity."  Id.  The ALJ never addressed the effect of Dr. Noll's opinion that Plaintiff could not drive or operate heavy machinery, or the portion of the RFC that Plaintiff must avoid "concentrated exposures" to "hazards (machinery, heights, etc.)" on his conclusion that Plaintiff could operate an industrial truck.  Id. at 16-18.

While Defendant is correct that the ALJ discussed Dr. Noll's records and opinions,

1    Defendant overlooks the fact that the ALJ failed to address Dr. Noll's opinion that Plaintiff could

2    not drive or operate heavy machinery.  This failure is critical because the ALJ concluded, contrary

3    to the treating physician's opinion, that Plaintiff could operate industrial trucks.  Initially, the ALJ's

4    selective analysis of the medical records supports remand.  See Edlund v. Massanari, 253 F.3d

5    1152, 1159 (9th Cir. 2001) (opining that selectively focusing on aspects of a medical report that

6    suggest non-disability, without addressing other portions that suggest disability, could provide a

7    basis for remand)[3].  Secondly, and more importantly, because the ALJ rejected Dr. Noll's

8    uncontroverted opinion that Plaintiff could not drive or operate heavy machinery, the ALJ was

9    required to provide clear and convincing reasons for the rejection.  See Turner, 613 F. 3d at 1222.

10   The ALJ failed to do so.  Alternatively, if the ALJ rejected Dr. Noll's opinion because he believed

11   that her opinion contradicted that of Dr. Morse or another doctor, he failed to say so and properly

12   explain the contradiction with specific and legitimate reasons as required by law.  Id.  In either

13   event, the ALJ's failure to address Dr. Noll's opinion and explain his reason for rejecting it

14   constitutes legal error and requires remand.

15       A similar failure exists with regards to Dr. Morse's testimony.  Dr. Morse testified that

16   Plaintiff should "avoid concentrated exposure to hazardous machinery," heights, fumes, gases,

17   and toxic substances.  Id. at 44.  The ALJ accepted this testimony and found that Plaintiff must

18   "avoid concentrated exposure to fumes, odors, gases, poor ventilation, etc., and hazards

19   (machinery, heights, etc.)."[4]  Despite these limitations, the ALJ concluded that Plaintiff is capable

20   of performing his prior relevant work as an industrial truck operator.  Id. at 18.  The ALJ's failure

21   to explain how Plaintiff can perform his prior work as an industrial truck operator while still

22   avoiding concentrated exposure to machinery also supports remand.  See Rodriguez v. Astrue,

23

24       [3]See also Juarez v. Astrue, 2011 WL 488655, *3-4 (C.D.Cal. Feb. 9, 2011) (stating that the "ALJ selectively
25   quoted from the opinion of Dr. Friedman, but omitted any discussion of Dr. Friedman's conclusion that Plaintiff was
     totally disabled from a psychiatric viewpoint" which would have had a significant impact on Plaintiff's vocational
26   abilities if it were accepted before remanding to reevaluate if plaintiff has a mental impairment); and Teter v. Heckler,
     775 F.2d 1104, 1106 (10th Cir. 1985) (noting that "although the ALJ relied on reports from three physicians in making
27   his determination, in so doing he read the reports selectively" and failed to note that the reports showed plaintiff's
     pain to have both physical and psychological components before reversing and remanding the matter).

28       [4]Hazards are described as "dangerous, moving machinery and unprotected heights." Id. at 57. Concentrated
     exposure is not further defined in the ALJ's opinion or the Administrative Record.

2010 WL 2079876, * 4, (C.D.Cal. May 21, 2010) (finding remand warranted where all three jobs identified by the vocational expert appeared to involve exposure to machinery and, therefore, appeared to contradict the ALJ's determination that Plaintiff must avoid concentrated exposure to machinery and noting that even if there were legitimate reasons as to why the jobs did not entail concentrated exposure to machinery, none were listed in the record).

While it is possible that the ALJ thought, based on the timing of the treatment records, that Dr. Noll's opinion that Plaintiff's medical condition prevented him from driving no longer applied, there is no way for this Court to know since the ALJ did not discuss Dr. Noll's advice and the Court is unable to make such an assumption. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (holding that reviewing courts are limited to reviewing the reasons stated by the ALJ). Even if the ALJ found that Dr. Noll's previous admonishments against driving and operating heavy machinery no longer applied, it was error not to discuss them and address Plaintiff's disability status from December 2006 to January 2008 (a period of at least twelve months) when Dr. Noll's records clearly included a prohibition on driving and operating heavy machinery. Id. at 256, 296, 284, 292, 445 and 278.

For the reasons set forth above, the ALJ erred by rejecting Dr. Noll's opinion that Plaintiff is unable to drive or operate heavy machinery without providing clear and convincing reasons supported by substantial evidence in the record for doing so. See Widmark v. Barnhart, 454 F.3d 1063, 1066-67 (9th Cir. 2006).

**B. Opinion of Plaintiff's Daughter**

Plaintiff also contends that the ALJ erred when he rejected the statements made by Plaintiff's daughter, Jennifer Rich. See Pl.'s Mot. at 10. Plaintiff argues that the ALJ's rejection of Ms. Rich's observations is contrary to the Commissioner's Regulations and Rulings and violates 20 C.F.R. 404.1513(e)(2)(1991). Id. at 11. Plaintiff further argues that lay witnesses do not require medical training to testify and do not have to be "disinterested third party witnesses." Id. at 12. Defendant disagrees and argues that "substantial evidence supports the ALJ's finding." Def.'s Mot. at 6. Defendant asserts that Ms. Rich's testimony was incompetent medical opinion evidence and constituted a sufficient basis for the ALJ's rejection of her testimony. Id. at 7.

14

1  Finally, Defendant states that even if the ALJ erred, any such error was harmless because Ms.

2  Rich's testimony mirrored Plaintiff's testimony and "substantial evidence supports the ALJ's finding

3  of non-disability."  Id.

4      "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony

5  concerning a claimant's ability to work."  Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1053

6  (9th Cir. 2006) (citing Dodrill, 12 F.3d 915, 919 (9th Cir. 1993)); 20 C.F.R. §§ 404.1513(d)(4) &

7  (e), 416.913(d)(4) & (e)).  This is because "lay testimony as to a claimant's symptoms or how an

8  impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded

9  without comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted).

10  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give

11  reasons that are germane to each witness."  Dodrill, 12 F.3d at 919; see also Robbins v. Soc. Sec.

12  Admin., 466 F.3d 880, 885 (9th Cir. 2006) ("the ALJ is required to account for all lay witness

13  testimony in the discussion of his or her findings").

14      In this case, Ms. Rich did not testify at Plaintiff's hearing but, instead, filled out an

15  extensive questionnaire entitled "Function Report Adult - Third Party" (form SSA-3380-BK).[5]  In

16  the form, which was included in the record before the ALJ, Ms. Rich stated that during the day

17  her father completed limited activities such as showering, dressing, feeding the dogs, and light

18

19      [5]While this Court has chosen to evaluate Ms. Rich's Third Party Adult Function Report as testimony for
20  purposes of this analysis, it is unclear if the Report and other forms created by the Social Security Administration
   should be given the same weight as testimony.  This is especially true when, as here, the reports or forms are
21  submitted without being signed under oath or under penalty of perjury.  See Ford v. Astrue, 2010 WL 669223, *3
   (C.D.Cal. Feb. 22, 2010) (stating that the standards used to evaluate lay witness testimony "appear equally applicable
22  to written statements")(citing Schneider v. Commissioner, 223 F.3d 968, 974-75 (9th Cir. 2000)) (stating that the ALJ
   erred in failing to consider letters submitted by claimant's friends and ex-employers in evaluating severity of claimant's
23  functional limitations); see also Jones v. Astrue, 2010 WL 701874, *3 (C.D.Cal. Feb. 25,2010) (same); and Tyler v.
   Astrue, 2010 WL 2135360 (C.D.Cal. May 21,2010) (same); but see Johnson v. Astrue, 2008 WL 4553141, *5 (C.D.Cal.
24  Oct. 09, 2008) (stating that "unlike lay testimony, there is no controlling precedent requiring an ALJ to explicitly
   address written statements, such as the Disability Report-Appeal form in this case" and that "because this was a
25  written report, not oral testimony, the ALJ was not even required to address it at all") (citing Howard v. Barnhart, 341
   F.3d 1006, 1012 (9th Cir.2003)) (finding that it is clear that an ALJ is not required to discuss all evidence in the record
26  in detail); Smith v. Astrue, 2010 WL 4530154, *11 (E.D.Cal. Nov. 2, 2010) (noting that because the third party
   statement given by claimant's friend was not testimony and was not signed under penalty of perjury, the standards
27  applicable to testimony did not apply to the statement and the ALJ was not required to specifically reject the
   statement); Phillips v. Astrue, 2011 WL 1212016,*3 (C.D.Cal. March 31, 2011) (stating that "unlike lay testimony,
28  there is no controlling precedent requiring an ALJ to explicitly address written statements, such as the "Function
   Report—Adult—Third Party" form in this case"); and Mosby v. Astrue, 2011 WL 2533252, *6 (C.D.Cal. June 27,2011)
   (same) (citing Howard, 341 F.3d at 1012).

house work.  AR at 209-210.  She also stated that her father was unable to "sustain any activity for long periods of time, including recreational [activities]," and that he was unable to sleep well due to chest pain, and difficulty breathing.  Id. at 210.  Ms. Rich described her father as depressed, and "unable to socialize at outdoor activities."  Id. at 214.  Finally, Ms. Rich claimed that her father's condition affects his ability to lift, walk, climb stairs, squat, kneel, bend, use his hands, stand, complete tasks, and concentrate.  Id.

The ALJ considered Ms. Rich's report but concluded that Ms. Rich's observations carried no weight:

> Jennifer Rich, the claimant's daughter reported in third party adult function reports on August 17, 2008, that the claimant was depressed, unable to work or sustain any activity for long periods of time, experiences heart pain, shortness of breath and weakness.  (Exhibit 8E and 10E).  The undersigned took into consideration this individual's opinion regarding the claimant's residual functional capacity because of her close contact with the claimant over a period of time; however, there is no evidence that this individual is a physician, psychologist, chiropractor, osteopath, nurse, or other type of medical or mental health specialist or worker.  There is no evidence that she has ever had any medical training or worked in any medical field or institution, or that she is familiar with Social Security rules and regulations.  As such this is only the opinion of one that has a familial relationship with the claimant and this opinion cannot be considered to have any weight.

Id. 18.  The ALJ's reasoning is incorrect.  In offering her report, Ms. Rich was not attempting to present expert opinion or medical findings as to the extent of Plaintiff's disability or his ability to work.  Rather, Ms. Rich was reporting her own observations of Plaintiff's limitations.  The value of this type of lay testimony, particularly that of family members, is well established.  See Smolen, 80 F.3d at 1289.  The ALJ erred when he discounted Ms. Rich's testimony simply because she does not have any medical training or familiarity with Social Security rules and regulations.  See Eggerud v. Astrue, 2008 WL 4682651, *8 (E.D.Wash. Oct. 21, 2008) (holding that the ALJ could not discount lay witness testimony merely because the witness was "not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms"); Williams v. Astrue,

16

1    2009 WL 1110312, *10 (E.D.Cal. April 23, 2009)(same).[6]

2         The ALJ also erred when he stated that Ms. Rich's testimony is "only the opinion of one

3    that has a familial relationship with the claimant and that this opinion cannot be considered to

4    have any weight." AR at 18.  Ms. Rich's relationship with her father is not a valid reason for

5    failing to give her report any weight.  See Smolen, 80 F.3d at 1289 (stating that "the fact that a

6    lay witness is a family member cannot be a ground for rejecting his or her testimony"); see also

7    Johnson v. Astrue, 2008 WL 4553141, at *6 (C.D.Cal. Oct.9, 2008) (stating that "the Ninth Circuit

8    has consistently held that bias cannot be presumed from a familial relationship"). Although Ms.

9    Rich's relationship with Plaintiff could be "one possible ground to question credibility, something

10   more is required" to show that her testimony is so tainted by bias that it must be rejected.

11   Traister v. Astrue, 2010 WL 1462118, *4 (C.D.Cal. Apr.13, 2010).

12        To properly reject Ms. Rich's testimony, the ALJ needed to provide reasons germane to Ms.

13   Rich.  See Dodrill, 12 F.3d at 919.  Because the ALJ failed to do so, this Court must now turn to

14   the issue of whether the ALJ's error was harmless.  An ALJ's failure to properly discuss competent

15   lay testimony favorable to the claimant is harmless error if a court "can confidently conclude that

16   no reasonable ALJ, when fully crediting the testimony, could have reached a different disability

17   determination."  See Stout, 454 F.3d at 1056.  An ALJ's decision will not be reversed for failure

18   to give specific reasons for rejecting lay testimony if the error was harmless.  See Cleveland v.

19   Astrue, 2010 WL 1678294, *7 (C.D.Cal. April 23, 2010) (citing Burch v. Barnhart, 400 F.3d 676,

20   679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.")).

21        Defendant argues that any error by the ALJ in handling Ms. Rich's testimony was harmless

22   because her testimony mirrored Plaintiff's testimony and "substantial evidence supports the ALJ's

23   finding of non-disability." Def.'s Mot. at 7.  The Court agrees with Defendant.  Ms. Rich's Function

24   Report Adult - Third Party is very similar to Plaintiff's testimony and Function Report - Adult.  Id.

25

26   [6] see also Bruce v. Asture, 557 F.3d 1113, 1116 (9th Cir. 2009) (finding that a lay person, plaintiff's wife, "though not a vocational or medical expert, was not disqualified from rendering an opinion as to how her husband's condition affects his ability to perform basic work activities") (citing 20 C.F.R. § 404.1513(d)(4)) (providing that evidence provided by lay witnesses may be used to show "the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work")); and McCutcheon v. Astrue, 378 Fed.Appx. 649, *1 (9th Cir. 2010) (finding that the ALJ erred by rejecting lay witness testimony on the basis that the witness had no medical or vocational training) (citing Bruce, 557 F.3d at 115-116).

10cv2022-MMA (BLM)

at 200-207 & 209-216.  Ms. Rich stated that Plaintiff can shower and dress himself, do light housework, feed the dogs, and prepare simple meals.  Id. at 209-211.  Plaintiff similarly reported that he showers on his own, dusts, does laundry, feeds and grooms his two dogs, and makes sandwiches, salads, and frozen dinners.  Id. at 200-202.  Ms. Rich also reported that Plaintiff experiences chest pain and difficulty breathing which disrupts his sleep, needs reminders to take his medicine, cannot drive, and requires encouragement to get through daily activities.  Id. at 210-212.  Plaintiff describes the same issues in his report.  Id. 201-203.  Finally, Ms. Rich reported that Plaintiff cannot do many activities for a long period of time, and has been affected in his ability to lift, walk, climb stairs, squat, kneel, bend, use his hands, stand, complete tasks, and concentrate.  Id. 213-214.  Plaintiff also reported that his ability to lift, walk, climb stairs, squat, bend, kneel, stand and reach have been affected.  Id. at 205.

Where lay witness testimony supporting a claim for disability benefits mirrors the claimant's testimony and the claimant is found to be not credible, the ALJ may reject the lay witness testimony for that reason alone.  See Ramirez v. Astrue, 2011 WL 1155682, *2 (C.D.Cal. March 29, 2011)(finding that the ALJ properly rejected the daughter's statements where the daughter's statements on an agency form closely mirrored the claimant's own statements which the ALJ did not find credible and where the claimant did not challenge the ALJ's credibility finding) (citing Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (holding that ALJ gave germane reason for rejecting claimant's wife's testimony where it was similar to claimant's own complaints that were properly rejected); and Cleveland, 2010 WL 1678294, at *8 (ALJ's failure to expressly provide reason for rejecting lay witness statements was harmless error where statements mirrored claimant's testimony that was properly found not credible))[7].

Here, the ALJ found that Plaintiff's statements concerning the "intensity, persistence, and limiting effects" of his symptoms were not credible to the extent that they were inconsistent with his RFC assessment.  AR. at 17.  In reaching this conclusion, the ALJ noted that Dr. Noll found that Plaintiff was clinically improved and stable and that his blood pressure was well controlled.

---

[7] see also Phillips, 2011 WL 1212016 at 3 (finding that the failure to address lay witness testimony was inconsequential where the testimony mirrored Plaintiff's subjective testimony that had been discounted as not fully credible by the ALJ, and where Plaintiff did not challenge the credibility finding).

1   Id. He further noted that Plaintiff has only received care for conservative routine maintenance,

2 there have be no significant changes in his medication, and no treating or examining physician

3 has determined that Plaintiff is completely unemployable. Id. The ALJ also found that Plaintiff

4 himself (and Ms. Rich) reported that he can do a wide variety of daily living activities and has the

5 ability to care for himself and maintain his home. Id. at 18. Plaintiff does not challenge the ALJ's

6 credibility finding. See Pl.'s Mot. & Pl.'s Reply.

7      The ALJ's decision to discount Plaintiff's testimony was legally valid, supported by

8 substantial evidence, and not challenged by Plaintiff. Because Ms. Rich's statement mirrors

9 Plaintiff's testimony, the ALJ's failure to provide appropriate and legal reasons for rejecting Ms.

10 Rich's statement was a harmless error. See Stout, 454 F.3d at 1056 (where the ALJ's error lies

11 in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing

12 court cannot consider the error harmless unless it can confidently conclude that no reasonable

13 ALJ, when fully crediting the testimony, could have reached a different disability determination).

14 **C.  Remand v. Reversal**

15      "The decision whether to remand for further proceedings or simply to award benefits is

16 within the discretion of [the] court." McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

17 "Remand for further administrative proceedings is appropriate if enhancement of the record would

18 be useful." Benecke, 379 F.3d at 593. On the other hand, if the record has been fully developed

19 such that further administrative proceedings would serve no purpose, "the district court should

20 remand for an immediate award of benefits." Id. "More specifically, the district court should

21 credit evidence that was rejected during the administrative process and remand for an immediate

22 award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the

23 evidence; (2) there are no outstanding issues that must be resolved before a determination of

24 disability can be made; and (3) it is clear from the record that the ALJ would be required to find

25 the claimant disabled were such evidence credited." Id. (citing Harman v. Apfel, 211 F.3d 1172,

26 1178 (9th Cir. 2000), McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002), and

27 Smolen, 80 F.3d at 1292). The Ninth Circuit has not definitely stated whether the "credit-as-true"

28 rule is mandatory or discretionary. See Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009)

(acknowledging that there is a splity of authority in the Circuit but declining to resolve the conflict); <u>Luna v. Astrue</u>, 623 F.3d 1032, 1035 (9th Cir. 2010) (finding rule is not mandatory where "there are 'outstanding issues that must be resolved before a proper disability determination can be made'"); <u>Shilts v. Astrue</u>, 400 Fed. Appx. 183, 184-85 (9th Cir. Oct. 18, 2010) (explaining that "evidence should be credited as true and an action remanded for an immediate award of benefits *only if* [the <u>Smolen</u> test is satisfied]").

Here, reversal is not appropriate because, even if Dr. Noll's opinion was credited, additional issues remain which must be resolved and it is not clear that Plaintiff would be found disabled. Because the ALJ determined that Plaintiff was not disabled because he could perform his past relevant work at Step Four, the ALJ never considered Step Five. Even if Dr. Noll's opinion was credited and Plaintiff was found unable to perform his past relevant work, it would not resolve the issue of whether Plaintiff was able to perform any other work existing in significant numbers in the national economy. Accordingly, the Court **RECOMMENDS** that the case be remanded for further proceedings consistent with this Report and Recommendation, not for the award of benefits.

///
///
///
///
///
///
///
///
///
///
///
///
///

10cv2022-MMA (BLM)

1

## CONCLUSION

2   For the reasons set forth above, this Court finds that the ALJ committed legal error when

3 he rejected Dr. Noll's opinion that Plaintiff could not drive or operate heavy machinery without

4 providing clear and convincing reasons for doing so.  Accordingly, this Court **RECOMMENDS** that

5 Defendant's cross-motion for summary judgment be **DENIED** and Plaintiff's motion for summary

6 judgment be **GRANTED IN PART AND DENIED IN PART** and that this case be **REMANDED**

7 for a new hearing and decision consistent with this Report and Recommendation.

8   **IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation

9 must be filed with the Court and served on all parties **no later than October 10, 2011**.  The

10 document should be captioned "Objections to Report and Recommendation."

11   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court

12 and served on all parties **no later than October 31, 2011**.  The parties are advised that failure

13 to file objections within the specified time may waive the right to raise those objections on appeal

14 of the Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951

15 F.2d 1153, 1157 (9th Cir. 1991).

16   **IT IS SO ORDERED.**

17

18 DATED:  September 19, 2011

19

20   BARBARA L. MAJOR
      United States Magistrate Judge

21

22

23

24

25

26

27

28

21                                                              10cv2022-MMA (BLM)